# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| _____ | |
| | : | **Case No. 24-61084-CV-DIMITROULEAS** |
| FRANDLEY LOUIS, on behalf of herself and<br>others similarly situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| BCG EQUITIES, LLC, | : |
| | : |
| Defendant. | : |
| _____ | : |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

## Introduction

At the heart of this case is BCG Equities, LLC's ("Defendant") alleged failure to register as a consumer collection agency with the Office of Financial Regulation of the Florida Financial Services Commission prior to filing dozens of debt collection actions against consumers in Florida.[1] Frandley Louis ("Plaintiff") contends Defendant's pursuit of these collection lawsuits violated the Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692f.[2] Defendant denies any liability or that its practices violated the law.

Following weeks of negotiations, the parties reached an agreement to settle this lawsuit on a class-wide basis whereby Defendant will create a non-reversionary settlement fund of $6,500 to be split equally among participating class members. Given that the proposed settlement class numbers 66 individuals, if everyone participates, each member will receive $98.48. Importantly, the settlement fund exceeds 1% of Defendant's book-value net worth, and thus is more than Plaintiff could have recovered for the class in statutory damages had she prevailed at trial.

Additionally, Defendant has confirmed it will no longer file lawsuits seeking to collect consumer debt in Florida without first registering as a consumer collection agency with the state. This commitment addresses the very collection conduct forming the basis for Plaintiff's and the class's claims.

---

[1]   Pursuant to the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*, prior to engaging in any business in Florida, a person who acts as a consumer collection agency must register with the State of Florida Office of Financial Regulation. Fla. Stat. § 559.553(1).

[2]   An entity's failure to register under Fla. Stat. § 559.553(1) can support a cause of action under the FDCPA. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) ("We therefore hold that a violation of the FCCPA for failure to register may, in fact, support a federal cause of action under Section 1692e(5) of the FDCPA for threatening to take an action it could not legally take.").

1

Defendant separately will pay the costs of settlement administration and an individual damages award to Plaintiff, as allowed under the statute. Defendant also will pay—separate from the above amounts—Plaintiff's counsel's reasonable attorneys' fees, costs, and expenses as awarded by the Court.

Plaintiff now seeks certification of the settlement class and preliminary approval of the class settlement. Plaintiff and her counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement. Defendant does not oppose this relief.

## Summary of the Class Settlement

### I. The settlement provides significant compensation for each class member and ensures that Defendant has ceased the collection conduct giving rise to this lawsuit.

The Settlement Agreement[3] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of all persons (a) with a Florida address, (b) against whom BCG Equities, LLC filed a complaint in a Florida court, (c) in connection with the collection of a consumer debt, (d) from June 21, 2023 through August 2, 2024. Using its collection records, Defendant has identified 66 potential members of the Class, including Plaintiff.

Class members who do not timely exclude themselves will receive a pro-rata share of the $6,500 settlement fund. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks, such funds will be redistributed to the Legal Aid Society of Palm Beach County—the *cy pres* recipient selected by the parties.

---

[3]     A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Jesse S. Johnson, attached hereto as Exhibit A.

Moreover, Defendant has confirmed in writing that it will no longer pursue consumer collection actions in the state of Florida without first registering as a consumer collection agency— an important change in business practices not necessarily available at trial. Finally, separate and apart from the settlement fund, Defendant will pay $1,000 to Plaintiff as "additional damages" pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), plus the costs of administration and an award of reasonable attorneys' fees and expenses to Plaintiff's counsel, subject to the Court's approval.[4]

## II. The Settlement Agreement provides for direct mail notice to all potential Class members.

The Settlement Agreement requires an ample notice program consisting of direct mail notice to each potential member of the Class. To that end, the parties have selected Class-Settlement.com to act as the settlement administrator here. Class-Settlement.com is an experienced settlement administrator previously approved for similar duties by this Court. *See, e.g.*, *Sinkfield v. Persolve Recoveries, LLC*, No. 21-80338, 2022 WL 16956460, at *1 (S.D. Fla. Oct. 17, 2022) (Altman, J.);[5] *Acuna v. Med.-Commercial Audit, Inc.*, No. 21-81256, 2022 WL 404674, at *2 (S.D. Fla. Feb. 9, 2022) (Dimitrouleas, J.).

## Argument

## I. This court should preliminarily certify the Class.

### A. The FDCPA is well-suited for class action treatment.

"Representative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed

---

[4]     Defendant has agreed not to oppose up to $30,000 in attorneys' fees, though Plaintiff ultimately may seek a larger fee award based on the amount of work necessary for her counsel to see this matter through final approval.

[5]     Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen & Assocs., Inc.*, No. 07-1935, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature").

### B.   Plaintiff satisfies the requirements of Rule 23(a).

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification under Rule 23(b)(3), she also must demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (Dimitrouleas, J.) (certifying FDCPA class). Notably, here, because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### 1.   The Class is so numerous that joinder of all members is impracticable.

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla.

4

1986). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, during the class period, Defendant filed collection lawsuits against 66 Florida consumers. Because the Class totals 66 persons dispersed throughout the state, its members are sufficiently numerous that joinder is impracticable. *See Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 694 (S.D. Fla. 2013) (Altonaga, J.) (preliminary showing of at least 48 class members was sufficient); *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (King, J.) (numerosity satisfied with estimated class size of at least 50 persons).

**2.  Plaintiff's claims present questions of law and fact common to the Class.**

Rule 23(a) also requires that there be at least one issue common to all Class members. *Drossin*, 225 F.R.D. at 615. Commonality is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (Moreno, J.).

The claims asserted here originate from the same conduct, practice, and procedure on the part of Defendant—namely, the collection of debt at a time when Defendant allegedly was not registered as a consumer collection agency as required by Florida law. *See* Fla. Stat. § 559.553(1). Thus, if brought and prosecuted individually, the claims of each Class member would require proof of the same material and substantive facts. *See, e.g.*, *Collins*, 290 F.R.D. at 694 ("Collins alleges Erin Capital instituted various garnishment proceedings while failing to register with the State of Florida as a consumer collection agency, in violation of the FDCPA. Here, the Court finds common questions of law and fact exist. The crux of the dispute is whether Erin Capital's failure to register as consumer collection agency qualifies as a violation of the FDCPA. A determination of this issue would apply equally and objectively to all of the potential plaintiffs in this action."). For these reasons, courts regularly certify class claims based on uniform debt collection conduct. *See, e.g.*,

*Klewinowski v. MFP, Inc.*, No. 13-1204, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013); *Lewis v. ARS Nat'l Servs., Inc.*, No. 09-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (Dimitrouleas, J.).

The same should hold for the Class here.

### 3.   Plaintiff's claims are typical of those of the Class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs in that it focuses on the class representative's individual characteristics in comparison to the class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations.").

Here, Plaintiff and the Class allegedly suffered by way of a common practice employed by Defendant: it sued each of them to collect a debt at a time when it allegedly was not registered as a consumer collection agency. *See, e.g.*, *Collins*, 290 F.R.D. at 696 (since class members "were each subject to [Erin Capital]'s unlicensed and unlawful collection activity," typicality was satisfied). Thus, Plaintiff possesses the same interests and has suffered the same injuries as each member of the Class, so they all assert identical claims and seek identical relief.

To be sure, there is no doubt that Plaintiff is a member of the Class and that her claims are typical of those of the other Class members. *See* ECF No. 1-1 (demonstrating Plaintiff's Class

6

membership through Defendant's collection lawsuit filed against her during the class period). As a result, Plaintiff's claims are typical of those of the Class she seeks to represent.

### 4. Plaintiff, and her counsel, will fairly and adequately protect the interests of members of the Class.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a plaintiff must show she can act in a fiduciary role representing the interests of the class and has no interests antagonistic to the class's. *In re Ins. Mgmt. Sols. Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002). "While the burden in a class certification motion is on the Plaintiffs, the adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-130 (5th Cir. 2005).

Here, Plaintiff's claims are aligned with those of the Class. She filed this case as a proposed class action to protect all those in Florida who were subjected to Defendant's similar collection efforts, and Plaintiff promptly negotiated a resolution that provides meaningful compensation—above and beyond the FDCPA's class statutory damages limit, *see infra*—to the 65 other individuals targeted by Defendant's collection efforts. Plaintiff has no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the Class. *Id*.

Moreover, Plaintiff has retained the services of counsel—Greenwald Davidson Radbil PLLC ("GDR")—who are experienced in complex class action litigation, will vigorously prosecute this action, and will protect all absent Class members. *See* Ex. A at ¶¶ 9-10 (collecting cases). As a result, Plaintiff satisfies Rule 23(a)(4).

### 5. Plaintiff's counsel should be appointed class counsel.

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class. Counsel at GDR will continue to prosecute this action, as they have done to date, in an efficient and effective manner. In addition to satisfying the adequacy prong of Rule 23(a)(4), GDR also satisfies the considerations of Rule 23(g) and should be appointed class counsel. *See, e.g.*, *Sinkfield*, 2022 WL 16956460, at *1 (appointing GDR as class counsel); *Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at *2 (S.D. Fla. May 27, 2020) (Altman, J.) (same); *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 3940256, at *3 (S.D. Fla. Aug. 19, 2019) (Middlebrooks, J.) (same); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (same).

**C.  Plaintiff satisfies the requirements of Rule 23(b)(3).**

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Pertinent here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members, and that, on balance, a class action be superior to other methods available for adjudication.

**1.  Common questions of law and fact predominate over individualized inquiries.**

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4.

The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits; permit adjudication of disputes that cannot be economically litigated individually; and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966). As the Northern District of Alabama explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer . . . fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [the plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5.

The same is true here. The central legal issue before this Court is whether Defendant violated the FDCPA by filing collection lawsuits in Florida without first registering as a consumer collection agency. Numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized debt collection conduct such as that alleged here. *See, e.g.*, *Collins*, 290 F.R.D. at 700 ("As previously established, the common issue of whether Erin Capital violated the FDCPA by failing to register as a consumer collection agency, would have a direct impact on every class member's effort to establish liability and the class members' entitlement to monetary relief."); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 662 (M.D. Fla. 2015) ("Here, the issues of whether Bush Ross is a debt collector and engaged in

collection activity and whether Bush Ross engaged in an act or omission prohibited by the FDCPA are issues common to Roundtree and the members of each of the proposed classes.").

As a result, Plaintiff readily satisfies the predominance requirement.

### 2. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's claims and those of the Class.

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

As the Eleventh Circuit explained, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017). This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016). Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015).

Because the claims in this case all arise from uniform collection conduct, a class action is the superior vehicle for determining the rights of absent class members, as Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of

10

claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA [].

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013). For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.").

## II. This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

In determining whether preliminary approval is warranted, the issue before the Court is whether the parties' negotiated settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the settlement may be given to Class members, and a hearing scheduled to consider final approval of the settlement. The Court, however, is not required at this point to make a final determination as to the fairness of the settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

While a full fairness determination is not necessary at this early juncture, courts within the Eleventh Circuit apply the following factors for assessing the reasonableness and adequacy of a class action settlement at the final fairness hearing: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e) also requires a court to consider additional factors, including that the class representative and counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another.

Here, Plaintiff is confident that each relevant factor supports that the settlement is fair, adequate, and reasonable, and should receive approval. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").

### A.  There was no fraud or collusion behind the parties' settlement.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010). Here, the parties engaged in informal discovery immediately upon Defendant's appearance, followed by weeks of settlement discussions. The parties' arm's-length negotiations demonstrate the fairness of their settlement, and that it is not a product of fraud or collusion. Indeed, counsel zealously negotiated on behalf of their clients, resulting in their exchange of written proposals and numerous lengthy telephone conferences before reaching a resolution.

Plus, these exchanges were informed by Defendant's provision of information related to the size of the settlement class and potential class damages, as detailed below. This factor correspondingly favors approval. *See Claxton*, 2020 WL 2759826, at *2 ("The proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members. The settlement was reached in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel, having adequate knowledge of the strengths and weaknesses of their claims and the defenses and the risks of proceeding with the litigation through a motion for class certification, trial, and appeal.").

### B.  The complexity, expense, and duration of the litigation favors approval.

Turning to the second factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (Gold, J.). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different. If the litigation had moved forward, Plaintiff would have had

to obtain class certification over Defendant's objection, and prevail at summary judgment, or trial, and on a likely appeal. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"). Moreover, because damages under the FDCPA are not mandatory, there is no guarantee Plaintiff would have recovered any money for the Class, even with a victory. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Given these considerations, preliminary approval of the settlement is appropriate, in part, to avoid the uncertainties of trial. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### C. The parties have sufficiently developed the factual record to enable Plaintiff and her counsel to make a reasoned settlement judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, from the outset of the case, the parties discussed the merits of the FDCPA claims at issue, and Defendant provided Plaintiff with information concerning the size of the settlement class as well as Defendant's net worth—the primary determinant of the class's total potential statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B).

Moreover, Plaintiff's counsel is well-versed in FDCPA litigation, having litigated numerous FDCPA class actions nationwide. *See* Ex. A, at ¶¶ 9-10. The settlement was therefore consummated with a good view towards the strengths and weaknesses of the case, and an understanding of the maximum potential Class recovery. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits, coupled with the range of possible recovery, favor preliminary approval.

Next, this Court considers "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. at 314. First, as to monetary benefits, in determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig*., 830 F. Supp. 2d at 1350.

No matter, the settlement fund here amounts to more than 1% of Defendant's book-value net worth, meaning the Class will receive benefits exceeding the best theoretical statutory damages recovery at trial for the Class given statutory limitations. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting FDCPA class statutory damages to the lesser of $500,000 or one percent of the debt collector's net

worth); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities).

Further, there was no guarantee of a *full* statutory damages recovery at trial because the FDCPA's damages provision is permissive rather than mandatory; the statute provides for awards *up to* certain amounts, after balancing specified factors like the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

So, even had Plaintiff and the Class proceeded to trial and prevailed on the merits, the jury still could have awarded little in the way of statutory damages, or potentially none at all. Indeed, such risk of a minimal damages award in an FDCPA class action was not merely hypothetical. *E.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Second, as to the merits of the Class's claims, given the relatively early stage of this litigation, success was anything but assured. Without settlement, Defendant was sure to object to the certification of any litigation class (as opposed to the settlement class now before the Court). And on the merits, Defendant was likely to argue that its registration status cannot support claims under the FDCPA, and that even if the Court were to find violations, such violations were unintentional and the result of *bona fide* errors for which Defendant would be entitled to an

affirmative defense under the law. *See* 15 U.S.C. § 1692k(c). Defendant's success on either of these defenses would have foreclosed *any* recovery under the statute.

Given the foregoing, the immediate relief provided by the settlement is significant, as individual recoveries of approximately $98.48 per participating Class member compare favorably with, or even surpass, others approved in recent FDCPA class settlements. *See, e.g.*, *Sinkfield v. Persolve Recoveries, LLC*, No. 21-80338, 2023 WL 511195, at *3 (S.D. Fla. Jan. 26, 2023) (Altman, J.) (approximately $130 per person); *Brockman v. Mankin L. Grp., P.A.*, No. 20-893, 2021 WL 911265, at *2 (M.D. Fla. Mar. 10, 2021) (approximately $60 per claimant); *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) (Middlebrooks, J.) ($27.51 per class member); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-803, 2019 WL 2280456, at *2 (M.D. Fla. May 28, 2019) ($10 per person); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) ($31 per person); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per person).

What's more, Plaintiff obtained her maximum potential individual damages award of $1,000, *see* 15 U.S.C. § 1692k(a)(2)(A), and she secured Defendant's confirmation that it will no longer pursue debt collection actions in Florida without first registering with the state as a consumer collection agency—the latter being prospective relief not necessarily available at trial. *See, e.g.*, *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) (Dimitrouleas, J.) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief

to private litigants."). This change in business practices will benefit not only the Class members, but all consumers who may become the target of Defendant's collection efforts in the future.

In sum, considering the benefits obtained here, in comparison to those likely at trial and those obtained in other similar actions, plus the risks in moving forward, this factor supports preliminary approval of the settlement.

### E.  The opinions of Plaintiff and her counsel strongly favor preliminary approval.

Additionally, both Plaintiff and her counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of all Class members. A strong initial presumption of fairness attaches to the proposed settlement because it was reached by well-qualified and experienced counsel engaged in arm's-length negotiations. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *accord* Ex. A at ¶¶ 9-21 (demonstrating proposed class counsel's extensive experience). And when compared with other similar FDCPA settlements, *see supra*, the parties' negotiated pact provides monetary and prospective relief that well matches—and even exceeds—the relief obtained by other FDCPA plaintiffs around the state, and around the country. As a result, Plaintiff's and her counsel's strong support for this settlement militates toward its approval.

### F.  The settlement treats members of the Class equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate

account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each Class member has the same claim, and as a result, the settlement provides that each participating Class member will receive an equal portion of the settlement fund. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### III. This Court should approve the proposed notice to Class members.

Under Rule 23(e), this Court also must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the Class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request

for statutory damages and reimbursement of her attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice.").

**IV. This Court should schedule a final fairness hearing.**

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Plaintiff respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 90 to 120 days after the Court's preliminary approval of the settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying order certifying the proposed settlement class, appointing Plaintiff its class representative and her counsel class counsel, granting preliminary approval to the parties' settlement, and directing notice as described above. Defendant does not oppose the relief requested herein.

Dated:  September 24, 2024                    Respectfully submitted,

                                             */s/ Jesse S. Johnson*
                                             James L. Davidson
                                             Florida Bar No. 723371
                                             Jesse S. Johnson
                                             Florida Bar No. 69154
                                             Greenwald Davidson Radbil PLLC
                                             5550 Glades Road, Suite 500
                                             Boca Raton, FL 33431
                                             Tel: (561) 826-5477
                                             jdavidson@gdrlawfirm.com
                                             jjohnson@gdrlawfirm.com

                                             Matthew Bavaro
                                             Florida Bar No. 175821
                                             Loan Lawyers
                                             3201 Griffin Road, Suite 100
                                             Ft. Lauderdale, FL 33312
                                             Tel: (954) 523-4357
                                             Matthew@Fight13.com

                                             *Counsel for Plaintiff and the proposed
                                             class*