# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| FRANDLEY LOUIS, on behalf of herself and others similarly situated, | **Case No. 24-61084-CV-DIMITROULEAS** |
| Plaintiff, | |
| v. | |
| BCG EQUITIES, LLC, | |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

## Introduction

With universal support from the parties and from class members, Frandley Louis ("Plaintiff") presents for final approval under Rule 23(e) a class settlement providing class members meaningful monetary relief while ensuring Defendant ceases the very collection conduct giving rise to Plaintiff's and the class's claims.

BCG Equities, LLC ("Defendant") agreed to create a non-reversionary class settlement fund of $6,500. All 65 participating class members will receive $100 each—an excellent recovery for a class settlement under the Fair Debt Collection Practices Act ("FDCPA"). Indeed, the settlement fund exceeds 1% of Defendant's book value net worth and thus promises more in compensation than Plaintiff could have recovered for the class in statutory damages, even had she prevailed at trial. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting statutory damages in a class action to the lesser of $500,000 or 1% of the collector's net worth).

Defendant also agreed to separately pay the costs of class notice and settlement administration, as well as a full individual statutory damages award to Plaintiff. And Defendant additionally agreed to pay—separate from the above amounts—Plaintiff's counsel's reasonable attorneys' fees, costs, and expenses, as approved by this Court.

Also important, Defendant confirmed in writing that it will no longer file lawsuits seeking to collect consumer debt in Florida without first registering as a consumer collection agency with the state. This prospective relief benefits not only class members but any other consumers who may be targeted by Defendant for collection in the future.

Plaintiff secured these excellent recoveries without class members having to wait months, or even years, longer while the parties completed discovery, undertook dispositive motion practice, and then potentially trial and subsequent appeals. Instead, relief will be immediate. Pursuant to

1

this Court's preliminary approval order, ECF No. 13, the class administrator distributed notice of the settlement—via direct mail—to each potential class member. As well, the administrator facilitated notice of the settlement to the requisite government agencies pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). *See* Declaration of Dorothy Sue Merryman, attached hereto as Exhibit A, at ¶¶ 4-10.

With the deadline to do so having passed on November 25, 2024, no class member objected to any aspect of the settlement, nor did anyone seek to be excluded. No objections have resulted from the CAFA notice, either. This broad support and lack of opposition underscore the success Plaintiff achieved for all class members.

Plaintiff and her counsel strongly believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of the class. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting final approval to the settlement.

Neither Defendant nor any class members oppose this relief.

**Class Settlement Summary**

This Court on September 25, 2024 certified a Rule 23(b)(3) settlement class composed of all persons with a Florida address against whom BCG Equities, LLC filed a complaint in a Florida court, in connection with the collection of consumer debt, between June 21, 2023 and August 2, 2024. *Louis v. BCG Equities, LLC*, No. 24-61084, 2024 WL 4310458, at *1 (S.D. Fla. Sept. 25, 2024) (Dimitrouleas, J.).

With the help of the Court-appointed settlement administrator, Class-Settlement.com, the parties mailed class settlement notices, directly, to 65 potential class members[1] against whom

---

[1] The parties initially estimated 66 class members but learned during class notice distribution efforts that there are only 65 unique individuals in the settlement class.

2

Defendant had filed consumer collection lawsuits during the relevant time period. *See* Ex. A at ¶ 8.[2] The parties directed notice to class members' last known mailing addresses according to Defendant's records, but prior to mailing the notices, Class-Settlement.com also updated addresses through the U.S. Postal Service's Change of Address database. Ex. A at ¶ 7.

Each class member will receive a pro-rata share of $100 from the $6,500 class settlement fund. In the event any settlement checks go uncashed after Class-Settlement.com takes all reasonable steps to forward checks to any forwarding addresses, the remaining settlement monies will be distributed to the Legal Aid Society of Palm Beach County—the *cy pres* recipient selected by the parties.

Moreover, Defendant has confirmed that it will no longer file lawsuits seeking to collect consumer debt in Florida without first registering as a consumer collection agency with the state. Such a change in Defendant's collection practices is an important public benefit that might not have been obtained had this case gone to trial.

Defendant also will pay to Plaintiff, separate and apart from the class settlement fund, $1,000 in "additional damages" pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2)(B)(i). Defendant separately is responsible for all costs of class notice and settlement administration, as well as an award of attorneys' fees, costs, and litigation expenses in the agreed amount of $37,000. This Court referred Plaintiff's fee motion to Magistrate Judge Hunt. *See* ECF No. 15.

Per this Court's preliminary approval order, the deadline for class members to submit exclusion requests or object to the settlement passed on November 25, 2024. *See* 2022 WL 16956527, at *5. Following a successful class notice campaign, the class's reaction to the

---

[2] At the same time, Plaintiff's counsel have maintained relevant settlement materials and case documents on counsel's website. *See* https://www.gdrlawfirm.com/Louis.

3

settlement has been universally positive. Not one person objected to the settlement, and no one sought exclusion. Ex. A at ¶ 11. No objections have resulted from CAFA notice, either.[3] Thus, the support for the parties' settlement is unanimous.

## Argument

### I. This Court should confirm its certification of the settlement class.

In connection with preliminary approval, this Court certified the settlement class identified above. 2022 WL 16956527, at *2. Nothing has changed in the interim, and so there is no need to revisit certification; the Court should confirm certification of the settlement class.

### II. This Court should finally approve the class settlement as fair, reasonable, and adequate under Rule 23(e).

The Eleventh Circuit identified six factors for courts to consider in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e) itself requires this Court to consider additional factors such as whether the class representatives and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

---

[3] Per the statute, an order granting final approval to a proposed class action settlement should not be issued until at least 90 days after the appropriate federal and state agencies are served with CAFA notice. 28 U.S.C. § 1715(d). Here, following a brief delay after preliminary approval, Defendant caused CAFA notice to be distributed on October 18, 2024. Ex. A at ¶ 9. Ninety days later is Thursday, January 16, 2025—about one week after the final fairness hearing scheduled for January 10, 2025. As a result, per CAFA, should this Court decide to approve this settlement, it should wait until January 17, 2025 to do so.

4

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 05-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Public policy strongly favors the pretrial settlement of class action lawsuits. Settlement has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.").[4]

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### A. The parties' arm's-length negotiations weigh in favor of final settlement approval, as there was no fraud or collusion behind the settlement.

Initially, a court must inquire whether a settlement is "free of fraud or collusion." *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010); *accord Roundtree v. BushRoss, P.A.*, No. 14-357, 2015 WL 5559461, at *2 (M.D. Fla. Sept. 17, 2015) ("Finally, there is no indication of any fraud or collusion, and both parties have aggressively and skillfully litigated this case.").

Here, the parties immediately engaged in informal discovery, then spent weeks negotiating a class resolution. The arm's-length settlement negotiations demonstrate the fairness of the parties'

---

[4] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

5

settlement, and that it is not a product of fraud or collusion. Counsel zealously negotiated on behalf of their clients, which included the exchange of written settlement proposals, plus lengthy telephone conferences among counsel to discuss the proposed settlement terms. And these exchanges were informed by Defendant's provision of class- and damages-related information, as detailed below. This factor correspondingly favors final approval. *See*, *e.g.*, *Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at *2 (S.D. Fla. May 27, 2020) (Altman, J.) ("The settlement was reached in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, having adequate knowledge of the strengths and weaknesses of their claims and the defenses and the risks of proceeding with the litigation through a motion for class certification, trial, and appeal.").

**B. The complexity, expense, and likely duration of the litigation favors final approval.**

Next, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (Gold, J.). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different. If the litigation had pressed forward, Plaintiff would have had to obtain class certification over Defendant's likely objection, then prevail at summary judgment, or at trial, and on a likely appeal. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to

6

the vagaries of a trial"). And putting aside any certification- or merits-based questions, the necessary motion practice to obtain certification and, ultimately, judgment would have taken many more months, if not a year or longer. By comparison, the settlement here makes immediate compensation available to all 65 class members.

Given these considerations and risks, as compared to the excellent financial and prospective relief obtained for the class, final approval is warranted. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### C. The parties have sufficiently developed the factual record to make a reasoned settlement judgment.

Turning to the third factor, courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, from the outset of the case, the parties discussed the merits of the class's FDCPA claims, and Defendant disclosed important information concerning the size of the settlement class as well as Defendant's own net worth—the primary determinant of the class's total potential statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B). Accordingly, the parties achieved their settlement with a clear view as to the strengths and weaknesses of the case, and they could compare the benefits of this settlement to further litigation.

Indeed, class counsel are well-versed in FDCPA litigation, having successfully litigated numerous FDCPA class actions nationwide. *See* ECF No. 12-1 at ¶¶ 9-10. The settlement therefore

7

was consummated with a firm understanding of the parties' respective positions and the maximum potential recovery for the class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits, coupled with the range of possible recovery, favor final approval.

For the fourth and fifth factors, courts evaluate "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314. First, as to monetary benefits, in determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.

No matter, the settlement fund here amounts to more than 1% of Defendant's book-value net worth, meaning the settlement class will receive benefits exceeding the best theoretical statutory damages recovery at trial given statutory limitations. *See* 15 U.S.C. § 1692k(a)(2)(B) (capping FDCPA class statutory damages at the lesser of $500,000 or one percent of the debt collector's net worth); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities).

Also noteworthy, there was never any guarantee of a *full* statutory damages recovery at trial because the FDCPA's damages provision is permissive rather than mandatory. The statute provides for awards *up to* certain amounts, after balancing specified factors like the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which

8

Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2); *see also see also Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

And so it follows, even had Plaintiff and the class prevailed at trial, the jury still could have awarded little in the way of statutory damages, or potentially none at all. And such a risk of a minimal damages award in an FDCPA class action was not merely hypothetical. *E.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Second, given the relatively early stage of this litigation, success was anything but assured. Without settlement, Defendant was sure to object to the certification of any litigation class (as opposed to the settlement class now before the Court). And on the merits, Defendant was likely to argue that its registration status cannot support claims under the FDCPA, and that even if the Court were to find violations, such violations were unintentional and the result of *bona fide* errors for which Defendant would be entitled to an affirmative defense under the law. *See* 15 U.S.C. § 1692k(c). Of course, Defendant's success on either of these defenses would have foreclosed *any* recovery under the statute—let alone one exceeding the statutory cap.

9

Given the foregoing, the immediate relief provided by the settlement is significant, as class members' recoveries of $100 each compare quite favorably to, and even surpass, many others approved in recent FDCPA class settlements. *See, e.g.*, *Sinkfield v. Persolve Recoveries, LLC*, No. 21-80338, 2023 WL 511195, at *3 (S.D. Fla. Jan. 26, 2023) (Altman, J.) (approximately $130 per person); *Brockman v. Mankin L. Grp., P.A.*, No. 20-893, 2021 WL 911265, at *2 (M.D. Fla. Mar. 10, 2021) (approximately $60 per claimant); *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) (Middlebrooks, J.) ($27.51 per class member); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-803, 2019 WL 2280456, at *2 (M.D. Fla. May 28, 2019) ($10 per person); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) ($31 per person); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per person).

What's more, Plaintiff obtained her maximum potential individual damages award of $1,000, *see* 15 U.S.C. § 1692k(a)(2)(A), and she secured Defendant's confirmation that it will no longer pursue consumer debt collection actions in Florida without first registering with the state as a consumer collection agency—prospective relief not necessarily available at trial. *See, e.g.*, *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) (Dimitrouleas, J.) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief to private litigants."). This change in Defendant's business practices will benefit not only class

members, but all consumers who may become the subject of Defendant's collection efforts in the future.

Considering the benefits obtained here in comparison to those likely at trial and those obtained in other similar actions, and accounting for the risks inherent in moving forward absent settlement, these factors strongly support final approval of the settlement.

### E. The opinions of Plaintiff and her counsel, coupled with universal support from class members and the lack of any settlement opposition, strongly favor final approval.

As to the sixth factor, both Plaintiff and her counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of all class members. A strong initial presumption of fairness attaches to the proposed settlement because it was reached with the assistance of well-qualified and experienced counsel engaged in arm's-length negotiations. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *accord* ECF No. 12-1 at ¶¶ 9-21 (demonstrating proposed class counsel's extensive experience). And when compared with other similar FDCPA settlements, *see supra*, the parties' resolution provides monetary and prospective relief that well matches—or even exceeds—the relief obtained by other FDCPA plaintiffs around the state, and around the country. As a result, Plaintiff's and her counsel's strong support for this settlement militates toward its approval.

Further, "[t]he attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). Following a direct mail notice campaign, no

11

opposition exists here—not one person objected to the settlement, nor did any objections result from CAFA notice. Moreover, no class member requested to be excluded from this settlement. The class's universally favorable reaction to the settlement supports its approval. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (Goodman, M.J.) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (Moreno, J.) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg., Inc.,* No. 13–60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (Cohn, J.) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class settlement, "such facts are overwhelming support for the settlement"); *Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) (Ungaro, J.) ("As to the fifth *Bennett* factor, the Court finds that the substance and amount of opposition to the settlement weighs in favor of the settlement's approval. No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

In sum, the class's unanimous support for the settlement has now reinforced the initial presumption of fairness such that class members' positive reactions, and the absence of any opposition, strongly favor final settlement approval.

### F. The settlement treats class members equitably.

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts

12

should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim, and as a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund, further supporting its fairness. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund."); *see also Burrow v. Forjas Taurus S.A.*, No. 16-21606, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) (Torres, M.J.) ("The Settlement also treats Settlement Class Members equally and fairly. There is no distinction between the benefits offered, and all Settlement Class Members receive the benefit of the Enhanced Warranty Service automatically. Furthermore, the steps Settlement Class Members must take to receive the Enhanced Warranty Service and the Inconvenience Payment are far from onerous.").

Moreover, class members were given notice of the settlement and had the ability to exclude themselves from the settlement to pursue their claims individually. *See Charvat v. Valente*, No. 12-5746, 2019 WL 5576932, *6 (N.D. Ill. Oct. 28, 2019) ("Moreover, the ability to opt out of the settlement allows class members who received more than three calls to pursue the possibility of a greater award in an individual suit."). These considerations additionally support final settlement approval.

### G. Distribution of notice of the settlement satisfied due process requirements and the requirements of Rule 23.

Lastly, Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Here, Class-Settlement.com used all reasonable efforts to provide direct mail notice to each member of the class. *See* Ex. A at ¶¶ 4-10. The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objecting or submitting a request to be excluded from the settlement; (5) information regarding class counsel's request for an award of attorneys' fees, costs and expenses; and (6) how to make inquiries and obtain additional information. *See* ECF No. 12-1 at 42-47.

In short, this notice plan ensured that class members' due process rights were amply protected, and the settlement should be approved. *See* Fed. R. Civ. P. 23(c)(2)(B); *Faught*, 668 F.3d at 1239-40.

## Conclusion

The parties worked efficiently and effectively to find a favorable resolution for the class. The negotiated settlement will provide class members $100 each, plus prospective relief in the form of Defendant's commitment to no longer engage in the very collection conduct here in dispute. Class members universally support the settlement—no one objected or asked to be excluded. This Court should enter the accompanying order granting final settlement approval.

Worth noting again, neither Defendant nor any class members oppose this relief.

Dated:  December 13, 2024

Respectfully submitted,

*/s/ Jesse S. Johnson*
James L. Davidson
Florida Bar No. 723371
Jesse S. Johnson
Florida Bar No. 69154
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

*Class Counsel*

Matthew Bavaro
Florida Bar No. 175821
Loan Lawyers
3201 Griffin Road, Suite 100
Ft. Lauderdale, FL 33312
Tel: (954) 523-4357
Matthew@Fight13.com

*Additional counsel for Plaintiff and the class*

15